UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
:
HOWARD J. BARNET, PETER L. BARNET, :
JANE L. BARNET, AS TRUSTEES OF THE :
2012 SARETTA BARNET REVOCABLE : Case No. 18-cv-4963
TRUST, and SOTHEBY'S, INC., :
:
                    Plaintiffs, :
: **COMPLAINT FOR**
  - against - : **DECLARATORY JUDGMENT**
:
MINISTRY OF CULTURE AND SPORTS :
OF THE HELLENIC REPUBLIC, :
:
                    Defendant. :
:
---------------------------------------------------------------x

      Plaintiffs Howard J. Barnet, Peter L. Barnet, and Jane L. Barnet, as Trustees of the 2012 Saretta Barnet Revocable Trust (the "Barnet Family"), and Sotheby's Inc. ("Sotheby's") (collectively, "Plaintiffs"), through their undersigned counsel, as and for their Complaint, allege upon knowledge as to the actions of themselves and upon information and belief as to the actions of others, as follows:

## NATURE OF THE ACTION

      1.    This is an action for declaratory relief arising from the actions of defendant Ministry of Culture and Sports of the Hellenic Republic (the "Ministry of Culture") to interfere without lawful justification with the attempted sale in New York of a bronze figure of a horse of Corinthian type, 14 cm tall, from the Geometric Period (the "Bronze Horse").

      2.    The Bronze Horse was acquired lawfully and in good faith by the late Howard and Saretta Barnet 45 years ago and has been part of their collection ever since. In 2017, the Barnet Family consigned the Bronze Horse, together with a number of other works of art from

the Barnet collection, to Sotheby's for sale at a public auction to be held in New York. The date of the auction was May 14, 2018.

3. On May 11, 2018—one business day before the auction was to take place—the Ministry of Culture sent Sotheby's a letter that, among other things, asserted that the Bronze Horse is cultural property belonging to the Hellenic Republic ("Greece") and demanded that the Bronze Horse be immediately withdrawn from the May 14, 2018 auction and repatriated to Greece.

4. The Ministry of Culture's letter set forth no factual basis—and there is no factual basis—to establish that the Bronze Horse belongs to Greece. In fact, the Barnet Family is the true and lawful owner of the Bronze Horse.

5. Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiffs now respectfully seek declaratory relief to declare the respective rights of the parties with respect to the Bronze Horse, specifically:

    (i) that the Barnet Family is the true and lawful owner of the Bronze Horse;

    (ii) that Greece has no ownership rights in or to the Bronze Horse;

    (iii) that Greece has no basis to seek forfeiture or repatriation of the Bronze Horse under applicable international and U.S. law; and

    (iv) that Sotheby's may lawfully sell the Bronze Horse on the Barnet Family's behalf.

6. This action is ripe for declaratory judgment, as there now exists an actual and justiciable controversy capable of judicial resolution between and among the parties.

## PARTIES

7. Plaintiff Howard J. Barnet, a trustee of the 2012 Saretta Barnet Revocable Trust, is a son of the late Howard and Saretta Barnet, and is a citizen and resident of New York, New York.

8. Plaintiff Peter L. Barnet, a trustee of the 2012 Saretta Barnet Revocable Trust, is a son of the late Howard and Saretta Barnet, and is a citizen and resident of New York, New York.

9. Plaintiff Jane L. Barnet, a trustee of the 2012 Saretta Barnet Revocable Trust, is a daughter of the late Howard and Saretta Barnet, and is a citizen and resident of New York, New York.

10. Plaintiff Sotheby's is a corporation organized under the laws of the State of New York, having its principal place of business at 1334 York Avenue, New York, New York.

11. Defendant the Ministry of Culture and Sports is an agency of the government of the Hellenic Republic, more commonly known as Greece.

## JURISDICTION AND VENUE

12. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

13. This Court has jurisdiction under 28 U.S.C. § 1330.

14. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1391(f), as the property that is the subject matter of this action is located in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A.     Bronze Horses from the Greek Geometric Period**

15. The Bronze Horse is just one example of a common style of Greek statues depicting horses from the Geometric period.

16. Bronze horses of a similar style were created throughout mainland Greece and on Crete. At least 1,100 such bronze horse figures are known to exist, and at least hundreds of such figures have been privately owned or in museum collections outside of Greece for decades if not centuries.

17. The Louvre in Paris acquired one such statue in 1912, which is believed to come from Laconia.

18. The Metropolitan Museum of Art in New York acquired another such statue in 1921, which is believed to come from Corinthia.

19. Major auction houses have repeatedly sold Geometric bronze horses like the Bronze Horse at public auctions over the past two decades.

20. To Plaintiffs' knowledge, the Ministry of Culture has never before claimed ownership over or sought to block the sale of any of the many Geometric bronze horses that have been publicly sold or publicly displayed outside of Greece.

**B.  The Barnets' Purchase and Ownership of the Bronze Horse**

21. Howard and Saretta Barnet purchased the Bronze Horse on or about November 16, 1973, and paid approximately £15,000.

22. Howard and Saretta Barnet purchased the Bronze Horse in good faith and with no reason to believe that any third party had any claim of right to or ownership interest in the property.

23. The provenance of the Bronze Horse includes that it was sold at a public auction in Switzerland by Münzen und Medaillen, an established and reputable European auction house, on May 6, 1967.

24. Howard and Saretta Barnet continued to own the Bronze Horse, displaying it at their home in Sands Point, New York for more than twenty years.

25. In 1989, the Bronze Horse was featured, depicted and described in a book entitled "Les chevaux de bronze dans l'art geometrique grec" ("Bronze horses in geometric Greek art") by Jean-Louis Zimmerman, of the University of Geneva.

26. In 1992, Howard Barnet passed away, and ownership of the Bronze Horse was vested entirely in Saretta Barnet.

27. In approximately 1997, Saretta Barnet moved to an apartment at 1001 Park Avenue, in New York, New York. The Bronze Horse was displayed there until her death in 2017.

28. In 2012, ownership of the Bronze Horse was transferred to the 2012 Saretta Barnet Revocable Trust, a New York trust. Plaintiffs Howard J. Barnet, Peter L. Barnet and Jane L. Barnet are the sole trustees of the 2012 Saretta Barnet Revocable Trust.

**C.    The Consignment of the Bronze Horse to Sotheby's**

29. In March 2017, Saretta Barnet passed away.

30. In July 2017, the Barnet Family consigned the Bronze Horse to Sotheby's for sale.

31. The Bronze Horse was scheduled for sale at an auction at Sotheby's, "The Shape of Beauty: Sculpture from the Collection of Howard and Saretta Barnet," on May 14, 2018, at 10:00 a.m., in New York, New York.

32. Sotheby's began public marketing for the Bronze Horse on February 6, 2018, posted videos and photographs of the Bronze Horse online in mid-April 2018, and published a full auction catalogue online on April 25, 2018.

33. The Sotheby's auction catalogue identified the Bronze Horse as: "Lot 4, Greek Figure of a Horse of Corinthian type, of stylized attenuated form standing on an openwork rectangular base, with crested mane with fine notches at the edge, cylindrical muzzle nearly encircled by grooved markings, long striated ears, and fragmentary tail, Bronze, Height 5 1/2 in

(14 cm), Geometric Period, circa 8th Century BC, Greek," and estimated its auction price at $150,000 to $250,000.

34. The auction catalogue, in describing the provenance of the Bronze Horse, noted that it had been sold as lot 2 in an auction at Münzen und Medaillen in Basel, Switzerland on May 6, 1967, and that Howard and Saretta Barnet thereafter acquired the Bronze Horse from Robin Symes on November 3, 1973.

35. Prior to offering the Bronze Horse for sale in the auction, Sotheby's conducted an inquiry into the provenance of the Bronze Horse and, among other things, confirmed that the Bronze Horse was in fact included in the catalogue for the May 6, 1967 Münzen und Medaillen auction.

36. The Bronze Horse was owned by two other art and antiquities dealers (the consignor and the purchaser, respectively, of the Bronze Horse in the May 6, 1967 auction) before being acquired by Robin Symes.

### D.  Greece's Demand for the Bronze Horse

37. On Friday, May 11, 2018, one business day before Bronze Horse was to be auctioned, Sotheby's received a letter by e-mail, from the Ministry of Culture ("Demand Letter"), marked "URGENT" with a subject line that referred to the "Sale of a bronze figurine of a horse (LOT 4/Sale no 9855, Auction in New York, 14th May, 2018)."

38. The Demand Letter asserted that the Bronze Horse is cultural property that had been stolen from Greece in violation of Greek patrimony laws, asserted Greece's ownership of the Bronze Horse, and threatened that persons in the United States involved in the sale of the Bronze Horse would be subject to criminal prosecution in Greece.

39.     The Demand Letter further demanded that Sotheby's "immediately withdraw" the Bronze Horse from the May 14, 2018 auction, "refrain, from today on, from any activity related to any type of delivery of [the Bronze Horse] to any third party," and repatriate the Bronze Horse to Greece.  The Demand Letter also noted that Greece may "take the necessary legal action in the competent courts," if Sotheby's refused to comply with its demands.

40.     The Demand Letter did not set forth any factual or legal basis for Greece's claim that the Bronze Horse constitutes stolen property that belongs to Greece.  Among other things, the Demand Letter provided no information as to when the Bronze Horse was discovered in Greece, when it was supposedly stolen, who stole it, the circumstances under which it was stolen, when it was removed from Greece, or by whom it was removed from Greece.

41.     The Demand Letter asserted, with no evidence, that the Bronze Horse "originates from the region of Thessalia, Greece."

42.     But in fact, Thessaly is just one of thirteen regions in Greece and is itself approximately 5,500 square miles, approximately the size of the state of Connecticut.

43.     As purported support for Greece's claim of ownership, the Demand Letter referred to Robin Symes' prior involvement with the Bronze Horse, which was described in the Sotheby's auction catalogue for the Barnet collection.  At the time the Barnets purchased the Bronze Horse from Symes in 1973, Symes was a highly respected art and antiquities dealer in London.  Decades later, Symes was accused of trading in looted antiquities.

44.     However, the documented provenance of the Bronze Horse pre-dates Symes' alleged acquisition of the item.  Therefore, Symes' involvement with the Bronze Horse lends no support to Greece's claim of ownership to the Bronze Horse.

45. The Demand Letter further suggested that the Bronze Horse may have been illegally exported from Greece, because Greece has no record in its archives "to prove that [the Bronze Horse] has left the country in a legal way."

46. However, as federal case law makes clear, the absence of proof that an antiquity has been lawfully exported does not and cannot constitute proof that the antiquity has been stolen in violation of a foreign patrimony law. Therefore, Greece's claim that it has no record of the Bronze Horse leaving the country lends no support to its claim of ownership.

47. The Demand Letter cited no other facts or evidence in support of Greece's claim of ownership.

48. The Demand Letter further cites to the UNESCO Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property ("UNESCO Convention"), to which Greece became a signatory on June 6, 1981. In the United States, the UNESCO Convention is implemented by the Convention on Cultural Property Implementation Act ("CPIA"), 19 U.S.C. § 2601 *et seq.*, which became effective on April 12, 1983. The CPIA is irrelevant to the Bronze Horse because it does not apply to an object that was indisputably outside of Greece prior to 1983.

49. Moreover, the CPIA's Stolen Cultural Property provision, Section 308, only applies to "cultural property documented as appertaining to the inventory of a museum or religious or secular public monument or similar institution . . . which is stolen from such institution . . . ." The Demand Letter does not allege that the Bronze Horse was stolen from an institution that had documented the Bronze Horse as part of its inventory.

50. The Demand Letter also cites a Memorandum of Understanding between Greece and the United States ("MOU"), which was entered into on July 17, 2011. This MOU is

irrelevant to the Bronze Horse because it does not apply to an object that was indisputably outside of Greece prior to 2011.

### E. The Withdrawal of the Bronze Horse from the Auction

51. Although the Demand Letter cited no facts or evidence that the Bronze Horse was stolen, the mere existence of Greece's threats and allegations on the eve of a scheduled auction placed a cloud over the artwork's marketability. As a practical matter, Greece's claim to ownership of the Bronze Horse, however meritless, has impaired Sotheby's ability to sell it on behalf of the Barnet Family.

52. Accordingly, following receipt of the Demand Letter from Greece, Sotheby's and the Barnet Family decided to withdraw the Bronze Horse from the May 14, 2018 auction.

53. On May 16, 2018, Sotheby's responded to Greece's Demand Letter, rejecting Greece's assertion that the Bronze Horse belongs to Greece rather than the Barnet Family, and explaining why Greece's claim of ownership over the Bronze Horse lacks any legal or factual basis.

54. In its response to the Demand Letter, Sotheby's also invited Greece to come forward by May 25, 2018 with any other facts or evidence in its possession to support its claim that the Bronze Horse constitutes stolen property that may not legitimately be sold by the Barnet Family and Sotheby's.

55. To date, Greece has not responded to Sotheby's request, and has failed to provide any additional facts or evidence supporting its claim.

56. The Bronze Horse is presently located in New York, New York.

irrelevant to the Bronze Horse because it does not apply to an object that was indisputably outside of Greece prior to 2011.

### E. The Withdrawal of the Bronze Horse from the Auction

51. Although the Demand Letter cited no facts or evidence that the Bronze Horse was stolen, the mere existence of Greece's threats and allegations on the eve of a scheduled auction placed a cloud over the artwork's marketability. As a practical matter, Greece's claim to ownership of the Bronze Horse, however meritless, has impaired Sotheby's ability to sell it on behalf of the Barnet Family.

52. Accordingly, following receipt of the Demand Letter from Greece, Sotheby's and the Barnet Family decided to withdraw the Bronze Horse from the May 14, 2018 auction.

53. On May 16, 2018, Sotheby's responded to Greece's Demand Letter, rejecting Greece's assertion that the Bronze Horse belongs to Greece rather than the Barnet Family, and explaining why Greece's claim of ownership over the Bronze Horse lacks any legal or factual basis.

54. In its response to the Demand Letter, Sotheby's also invited Greece to come forward by May 25, 2018 with any other facts or evidence in its possession to support its claim that the Bronze Horse constitutes stolen property that may not legitimately be sold by the Barnet Family and Sotheby's.

55. To date, Greece has not responded to Sotheby's request, and has failed to provide any additional facts or evidence supporting its claim.

56. The Bronze Horse is presently located in New York, New York.

## COUNT I

### Declaration of Ownership

57. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 56 above as if fully set forth herein.

58. Howard and Saretta Barnet purchased the Bronze Horse over 45 years ago, from Robin Symes, who, at the time, was a well-respected art dealer in London.

59. The documented provenance for the Bronze Horse pre-dates Symes' involvement, showing that it was previously purchased at a public auction in 1967 at Münzen und Medaillen in Switzerland.

60. The Barnets paid value for the Bronze Horse, have possessed it for 45 years, and acted in good faith throughout.

61. Greece has not offered any factual or legal support for its claim of ownership over the Bronze Horse and cannot meet its burden of showing that the Barnet Family does not lawfully own and possess the Bronze Horse.

62. The Barnet Family is the true and lawful owner of the Bronze Horse.

63. Greece has no ownership interest in, or rights to, the Bronze Horse.

64. There is no basis for the forfeiture or repatriation of the Bronze Horse under U.S. or international law.

65. Sotheby's may lawfully sell the Bronze Horse on the Barnet Family's behalf.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in favor of Plaintiffs as follows:

A. A declaratory judgment that the Barnet Family, not Greece, owns the Bronze Horse, that there is no basis for the forfeiture or repatriation of the Bronze Horse under U.S. or

international law, and that Sotheby's can lawfully sell the Bronze Horse on the Barnet Family's behalf;

  B. Interest, costs and disbursements relating to this action, including reasonable attorneys' fees, incurred in this action; and

  C. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
    June 5, 2018

           SCHULTE ROTH & ZABEL LLP

          By: /s/ Gary Stein
            Gary Stein
            Seetha Ramachandran
            Sarah Schuster

          919 Third Avenue
          New York, NY 10022
          (212) 756-2241
          Gary.Stein@srz.com

          *Attorneys for Plaintiffs*