UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x :
HOWARD J. BARNET, PETER L. BARNET, :
JANE L. BARNET, AS TRUSTEES OF THE : Case No. 18-cv-4693
2012 SARETTA BARNET REVOCABLE :
TRUST, and SOTHEBY'S, INC., :
 :
                            Plaintiffs, :
 :
    - against - :
 :
MINISTRY OF CULTURE AND SPORTS :
OF THE HELLENIC REPUBLIC, :
 :
                            Defendant. :
-------------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS REPLY TO PLAINTIFFS' OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Leila A. Amineddoleh
Amineddoleh & Associates LLC
43 West 43rd Street, Suite 171
New York, NY 10036
Attorney for Defendant,
Ministry of Culture and Sports
of the Hellenic Republic

# TABLE OF CONTENTS

**Page**

Table of Authorities..................................................................................................................ii

I. Introduction .....................................................................................................................1

II. Analysis ...........................................................................................................................1

    1. The Ministry Had a Reasonable Basis To Contact Plaintiff Auction House Regarding the Bronze Horse ........................................................................................ 1

    2. *Hellenic Republic v. Ward* Bears No Relevance to the Present Case ....................... 2

    3. The Case Must be Dismissed under the FSIA because None of the Enumerated Exceptions Apply ...................................................................................................... 5

        a. *The nature of the Ministry's activity is not commercial and cannot be performed by a private party*..................................................................5

        b. *A letter such as the Ministry's does not amount to commercial activity* .... 6

        c. *Protection of Cultural Heritage is a Sovereign Activity* ............................7

    4. Plaintiffs' Reliance on Fine Art and Museum Disputes is Misplaced ........................ 8

    5. Defendant's letter did not have a direct effect in the US for purposes of the FSIA..... 9

III. Conclusion ....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.R. Int'l Anti-Fraud Systems, Inc. v. Pretoria Nat. Cent. Bureau of Interpol*,
  634 F.Supp.2d 1108 (E.D. Cal. 2009) ............................................................. 3

*Anderson Trucking Service, Inc. v. Eagle Underwriting Group, Inc.*,
  No. 3:17-cv-00817 2018 WL 4039326 (D. Conn. Aug. 23, 2018) ................. 9

*Cargill Intern. S.A. v. M/T Pavel Dybenko*,
  991 F.2d 1012 (2d Cir. 1993) ......................................................................... 3

*Cassirer v. Kingdom of Spain*,
  616 F.3d 1019 (9th Cir. 2013) ........................................................................ 8

*City of New York v. The Permanent Mission of India to the United Nations*,
  446 F.3d 365 (2d Cir. 2007) ........................................................................... 9

*Crist v. Republic of Turkey*,
  995 F.Supp. 5 (D.D.C. 1998) ......................................................................... 2

*Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*,
  12 F.3d 317 (2d Cir. 1993) ............................................................................. 3

*Garb v. Republic of Poland*,
  440 F.3d 579 (2d Cir. 2006) ........................................................................... 9

*Hellenic Republic of Greece v. Michael Ward, Inc.*,
  No. 93 Civ. 3493 (WK) (S.D.N.Y.) ......................................................... 2, 3, 4

*Kamat v. Kurtha*,
  2008 WL 5505880 (S.D.N.Y. Jan. 18, 2004) ................................................. 9

*LNC Invs., Inc. v. Republic of Nicaragua*,
  115 F.Supp.2d 358 (S.D.N.Y. 2000) .............................................................. 3

*Malewicz v. City of Amsterdam*,
  517 F.Supp.2d 322 (D.D.C. 2007) .............................................................. 8, 9

*NML Capital, Ltd. v. Banco Central de la Republica Argentina*,
  652 F.3d 172 (2d Cir. 2011) ........................................................................ 2, 3

*Nnaka v. Federal Republic of Nigeria*,
  238 F.Supp.3d 17 (D.D.C. 2017) ................................................................ 6, 7

# TABLE OF AUTHORITIES
# (CONT'D)

Page(s)

*Price v. U.S.*,
   174 US 373 (1899) .................................................................................................. 2

*Republic of Argentina v. Weltover, Inc.*,
   504 US 607, 112 S.Ct. 2160 (1992) ..................................................................... 6, 7

*Republic of Turkey v. OKS Partners*,
   797 F.Supp. 64 (D. Mass. 1992) ............................................................................ 2

*Saudi Arabia v. Nelson*,
   507 US 349, 113 S.Ct. 1471 (1993) ........................................................................ 7

*Shapiro v. Republic of Bolivia*,
   930 F.2d 1013 (2d Cir. 1991) ................................................................................. 3

*Smith v. Overseas Korean Cultural Heritage Foundation*,
   279 F.Supp.3d 293 (D.D.C. 2018) ....................................................................... 8, 9

*Texas Trading & Milling Corp. v. Federal Republic of Nigeria*,
   647 F.2d 300 (2d Cir. 1981) ................................................................................. 10

*U.S. v. Mitchell*,
   445 U.S. 535 (1980) ................................................................................................ 2

*Walker International Holdings Ltd. v. Republic of Congo*,
   395 F.3d 229 (5th Cir. 2004) .................................................................................. 2

*Westfield v. Fed. Republic of Germany*,
   633 F.3d 409 (6th Cir. 2011) ............................................................................ 5, 10

*Williams v. Nat'l Gallery of Art, London*,
   No. 16-cv-6978, 2017 WL 4221084 (S.D.N.Y. Sept. 21, 2017) ............................. 7

**Statutes**

Foreign Sovereign Immunities Act ............................................................................. *passim*

FSIA §1605(a)(1) ............................................................................................................ 2

**Other Authorities**

H.R. Rep. No. 14-1487, reprinted in 1976 U.S.C.C.A.N. 6604 ...................................... 3

H.R. Rep. No. 94-1487 (1976) ........................................................................................ 7

**TABLE OF AUTHORITIES**
**(CONT'D)**

**Page(s)**

Simon Mackenzie, *Regulating the Market in Illicit Antiquities*, Australian Institute of Criminology (Sept. 2002), https://traffickingculture.org/app/uploads/2012/07/regulating-the-market-in-illicit-antiquities.pdf ................................................................................. 8

I.   Introduction

The core of this case is the commercial activity exception of the Foreign Sovereign Immunities Act (FSIA). In their *Memorandum of Law in Opposition to Defendant's Motion to Dismiss* (Case No. 18-cv-04963-KPF), Plaintiffs argue that the Ministry of Culture and Sports of the Hellenic Republic ("the Ministry") engaged in commercial activity by sending a written communication, which subsequently had a direct effect in the United States. This proposition is troubling on several grounds: (1) It ignores important issues presented in Defendant's *Motion to Dismiss* (Case No. 18-cv-4963); (2) It suggests that the Ministry had no basis for asserting a sovereign interest in the Bronze Horse; and (3) It characterizes a short letter as the basis to overcome sovereign immunity and haul a foreign state into this court. This Reply demonstrates that Plaintiffs' view is erroneous and not adequately supported by judicial precedent.

II.   Analysis

**1. The Ministry Had a Reasonable Basis To Contact Plaintiff Auction House Regarding the Bronze Horse**

Plaintiffs obfuscate important facts and issues – there were many red flags which led the Ministry to contact Sotheby's, as part of its responsibility to seek out antiquities believed to be looted from the Greek State, and which serve as the basis for its letter: (1) the involvement of Robin Symes (Def. Br. 2); (2) the Bronze Horse's appearance in the Symes-Michaelides Archive (Def. Br. Ex. A at 1); (3) the Barnet Family's previous acquisition of looted antiquities (Def. Br. at 24); (4) the Bronze Horse's purchase and sale by anonymous parties, making its history difficult to trace (Compl. at 4; Def. Br. at 3; and Def. Br. Ex. B at 1); (5) its first appearance on the market in Switzerland (*Id.*); (6) the complete lack of records demonstrating legal export from Greece (Aff. Ex. A. at 1); (7) the belief that the Bronze Horse was found in an area heavily looted during the decade when it first publicly appeared (Def. Br. at 3); and (8) the falsehood contained in Sotheby's catalog, and the subsequent admission of its "error." (Def. Br. Ex. B at 1).

The Ministry is actively investigating, but it may not be possible, at this time, to provide Plaintiffs with the details they demand (Pl. Br. at 3) because the nature of stolen property is such that thefts are concealed and antiquities are traded by intermediaries. However, that is not the question here -- the issue is whether the Ministry's communication was commercial activity, as defined by the FSIA.

### 2. *Hellenic Republic v. Ward* Bears No Relevance to the Present Case

Plaintiffs' discussion and reliance on *Hellenic Republic v. Ward* is unavailing, since it is intended to distract from the relevant issues. *Ward* is inapposite here, as it does not discuss the FSIA. Moreover, Plaintiffs suggest that the Greek State waived its immunity in all cases related to cultural heritage because it was once a plaintiff, over two decades ago. This is an absurd misreading of the FSIA, as there is no blanket waiver of immunity applied to a sovereign. It would be akin to holding that the federal government has but to waive immunity once to be sued in perpetuity, which is patently untrue. *See U.S. v. Mitchell*, 445 U.S. 535, 538 (1980). Rather, a sovereign must unequivocally consent to be sued on a case-by-case basis. *Id.* Plaintiffs attempt to impose an unreasonably broad interpretation of FSIA's plain language provisions, which were drafted pursuant to clear Congressional intent to preserve international comity.[1] Furthermore, foreign sovereigns have successfully obtained immunity under the FSIA subsequent to initiating litigation in the US in other matters. *See Republic of Turkey v. OKS Partners*, 797 F.Supp. 64 (D. Mass. 1992) and *Crist v. Republic of Turkey*, 995 F.Supp. 5 (D.D.C. 1998).

Waiver must be "clear and unambiguous" under the statutory language of FSIA §1605(a)(1), *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 195 (2d Cir. 2011), citing *Carpenter v. Republic of Chile*, 610 F.3d 776, 779 (2d Cir. 2010); as well as "an intentional and knowing relinquishment of the legal right." *Walker International Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 234 (5th Cir. 2004), citing *Good v. Aramco Services Co.*, 971 F.Supp. 254, 258 (S.D. Tex. 1997). Additionally, a waiver of

---

[1] *See also, Price v. U.S.*, 174 US 373, 375-376 (1899): "It is an axiom of our jurisprudence. The government is not liable to suit unless it consents thereto, and its liability in suit cannot be extended beyond the plain language of the statute authorizing it."

immunity must specifically include the foreign state <u>and</u> the relevant agency or instrumentality. *NML Capital* at 196; *see also, LNC Invs., Inc. v. Republic of Nicaragua*, 115 F.Supp.2d 358, 361 (S.D.N.Y. 2000). This is not the case here. By asserting immunity under the FSIA after choosing to participate in an unrelated litigation, a foreign sovereign defeats the possibility of a waiver, and is thus immune. *See A.R. Int'l Anti-Fraud Systems, Inc. v. Pretoria Nat. Cent. Bureau of Interpol*, 634 F.Supp.2d 1108, 1117 (E.D. Cal. 2009), citing *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000).

The Ministry did not relinquish its immunity in its letter; on the contrary, it explicitly reserved its rights to pursue remedies <u>in Greece</u> according to the applicable law. Moreover, in *Ward*, the Ministry itself chose to avail itself of U.S. jurisdiction, whereas here, it is a defendant raising the FSIA as a defense. The Second Circuit has stressed that construing implicit waivers must be done with extreme caution, as otherwise it "would result in a vast increase in the jurisdiction of the federal courts over matters involving sensitive foreign relations." *Cargill Intern. S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir. 1993), citing *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F. Supp. 1340, 1351 (S.D.N.Y. 1988). Federal courts have been "virtually unanimous" in construing implied waivers narrowly, and are reluctant to find that a waiver exists unless the circumstances are unambiguous. *Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir. 1993); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991). This approach is based on the legislative history of the FSIA. *See* H.R. Rep. No. 14-1487, at 18, reprinted in 1976 U.S.C.C.A.N. 6604, 6617.

Plaintiffs cannot use a letter that does not contain a clear and unambiguous waiver in order to drag the Ministry into court by claiming that this constitutes a valid waiver of immunity.[2] The presumption of immunity, a stringent legal protection, was a conscious choice made by the drafters of the FSIA. The Ministry does not and has not consented to be sued in this instance. Assuming *arguendo* that the Ministry had waived

---

[2] For instance, an arbitration agreement "without more," does not operate as a waiver of immunity. *Cargill* at 1017.

3

immunity for all cultural heritage cases -- which is untrue <u>and</u> unconstitutional, according to the Ministry's mandate -- given the lack of a clear and unambiguous intent to participate in US litigation by the Greek State, this argument must fail.

Further, Plaintiffs' many references to *Ward* fail to note the stark differences between the two cases. The defendant dealer in *Ward* conducted due diligence prior to the contested sale; unlike Sotheby's, Ward contacted the Ministry concerning a collection of Mycenaean jewelry, the Aidonia Treasure. The Ministry erred by approving its sale, and Ward attempted to sell the collection. In the interim, an expert recognized the treasure as looted. The Ministry tried to stop the sale, but Ward refused. The Ministry filed a complaint, Ward answered, and the parties settled shortly thereafter. *Hellenic Republic of Greece v. Michael Ward, Inc.*, No. 93 Civ. 3493 (WK) (S.D.N.Y.).

The only relevance *Ward* has to the instant case is that it demonstrates the need for the Ministry to police the market. Interestingly, the Bronze Horse is only a small fraction of the treasure's value. The sales price of the Aidonia Treasure was $1,500,000 (approximately $2,583,092.19 in today's money),[3] while the Bronze Horse was estimated to sell between $150,000 and $250,000. Initiation of this lawsuit over a relatively inexpensive antiquity begs the question: why is Sotheby's pursuing this matter? We suspect Plaintiffs are using this case to create a dangerous precedent—striking fear in foreign sovereigns by hauling them into court for asserting their rights in cultural objects being sold in the US, a nation known as the biggest market for antiquities.[4]

The Ministry is caught between a rock and a hard place, particularly given its limited resources. If the Ministry contacts an auction house, it will be hauled into court. If the Ministry does not contact an auction house, it risks objects disappearing on the private market. Rather than fail to meet its constitutional mandate,

---

[3] Friedman, S. M. (2000) *The Inflation Calculator*, Library of Congress' E-Resource [available at https://lccn.loc.gov/2004564254] (last visited Dec. 12, 2018).

[4] Art Basel and UBS published a joint report on the state of the art and antiquities market, stating that the United States is the country with the largest market share (42%). 2017 was a record year for art and antiquities auctions, reaching $28.5 billion.

the Ministry acted to protect an object believed to be looted, and stated its intention to use legal means to protect its rights. These are not "threats" or "unwarranted demands."[5] The discreetly sent letter contained a concern regarding the object's provenance and the basis for contacting the auction house about antiquities under the Ministry's purview. The Ministry has supplied ample evidence to satisfy Plaintiffs that it was acting in its governmental capacity to diligently protect sovereign interests in cultural heritage.

### 3. The Case Must Be Dismissed under the FSIA because None of the Enumerated Exceptions Apply

There is nothing in the nature of the Ministry's letter that serves to trigger the commercial activity exception. Plaintiffs mischaracterize the letter as an attempt to enter the antiquities market by intervening in it. (Pl. Br. at 2, 8, and 11.) The Ministry has not entered into the marketplace, either in NY or anywhere else. Moreover, in policing the market for antiquities from the Greek State, the Ministry is a regulator of the market for Greek antiquities and is exerting a patrimonial claim, which only sovereigns may do.[6]

#### *a. The nature of the Ministry's activity is not commercial and cannot be performed by a private party*

Plaintiffs have the ultimate burden of establishing that one of the specific enumerated exceptions to the FSIA applies. *See Westfield v. Fed. Republic of Germany,* 633 F.3d 409, 413 (6th Cir. 2011). Plaintiffs cannot meet this burden because the nature of the letter was not commercial. Contrary to Plaintiffs' contention, we do not conflate "nature" and "purpose." (Pl. Br. at 15 and 16.) Rather, we assert that neither the purpose nor the nature of the letter was commercial. The letter is an assertion of a cultural heritage right-- the right and obligation of the Ministry to protect heritage of its nation. The letter was not a communication that a private party could ever transmit to contest ownership. The nature of the letter is sovereign because it is an extension of the Ministry's sovereign constitutional duties to protect objects originating from the Greek

---

[5] DN 22, p. 10 and 12.

[6] I.e., an ownership claim based on a statutory enactment vesting ownership in the State, without the object having ever been in the possession of the Greek government.

State and hold them in trust for future generations. Moreover, this is not a "a straightforward dispute over ownership" (Tr. of Pre-Mot. Conf. at 4), but rather a dispute about the ability of a sovereign to protect cultural heritage originating from within its borders. Plaintiffs oversimplify this matter by equating sovereign protection of cultural heritage with ownership of private property, such as fine art.[7]

In examining "nature" versus "purpose," Plaintiffs discuss a government contract for the purchase of military supplies. (Pl. Br. at 16.) Although not cited, this analysis stems from *Weltover* at 607, where the Supreme Court asks whether actions by a foreign state are the "the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" (emphasis in the original) The Court stated that regulations limiting foreign currency exchange are sovereign because authoritative control of commerce cannot be exercised by a private party, contrasted with a contract to purchase military provisions, such as boots or bullets, which is commercial, "because private companies can similarly use sales contracts to acquire goods," citing *Stato di Rumania* v. *Trutta,* [1926] Foro It. I 584, 585-586, 589 (Corte di Cass. del Regno, Italy). Hence, while contracts for the purchase of goods are commercial, the regulation of a national market is not. Here, the Ministry did not enter into a contract for goods or services *via* letter, but instead asserted its right to monitor the sale of antiquities originating from within its borders.

### *b. A letter such as the Ministry's does not amount to commercial activity*

Plaintiffs rely on *Nnaka v. Federal Republic of Nigeria,* 238 F.Supp.3d 17 (D.D.C. 2017) for their assertion that a letter from a sovereign is commercial activity. And while *Nnaka* does indeed involve the transmission of letters, these were sent in furtherance of the commercial transaction of hiring an attorney for a fee. In the instant case, the Ministry did not send a letter to engage in commercial services. In *Nnaka,* the court explicitly stated that: "retaining an attorney is the type of activity by which private parties engage in commerce," and thus is certainly commercial. The fact that the attorney was hired through a written communication was incidental. The court found that retaining a private (non-governmental) attorney is the type of activity by which private parties engage in commerce. *Nnaka* at 28.

---

[7] We examine the differences below in Section 4.

6

Plaintiffs conflate the Ministry's actions with those of a private player in order to circumvent the presumption of sovereign immunity. However, a district court in this very jurisdiction already determined that a foreign sovereign's mere act of sending a letter is not commercial. In *Williams v. Nat'l Gallery of Art, London*, No. 16-cv-6978, 2017 WL 4221084 (S.D.N.Y. Sept. 21, 2017), plaintiffs argued - as here - that the issuance of a letter satisfied the commercial activity exception. The Court found that the letter was insufficient to grant jurisdiction, and determined that doing otherwise "would, effectively, allow any plaintiff to manufacture jurisdiction under the commercial activity exception by prompting foreign sovereigns to respond to demand letters" and would undercut Congressional intent in granting foreign sovereigns immunity from US courts. *Williams* at *7.

### c. *Protection of Cultural Heritage is a Sovereign Activity*

The legislative history of the FSIA demonstrates that sovereign immunity is essential for US international relations. According to H.R. Rep. No. 94-1487 at 14 (1976), immunity applies in "cases involving acts of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those in which private parties normally perform." The protection of heritage by the Ministry is the former. Private parties do not, and cannot, protect and police a nation's heritage. Plaintiffs did not, and cannot, cite a single case in which a private party represents the sovereign interest in a cultural item. Only a sovereign has this ability.

By policing its cultural heritage, the Ministry acts as a regulator of Greek antiquities. *Republic of Argentina v. Weltover, Inc.*[8] and *Saudi Arabia v. Nelson*[9] state that if a foreign sovereign acts as a market regulator, then its activity is not commercial. The Ministry's letter derives from the Greek State's regulation of the market to curb the illicit trade of Greek antiquities, and was sent in furtherance of its patrimonial claim

---

[8] 504 US 607, 112 S.Ct. 2160 (1992).
[9] 507 US 349, 113 S.Ct. 1471 (1993).

(Def. Br. Ex. A at 1), a claim only a sovereign can assert. While private parties participate in the market, they may not create, implement, and enforce cultural heritage laws; these are powers unique to sovereigns. Sovereigns regulate the antiquities market, both internally (for example, by requiring licensing of dealers and sometimes entirely prohibiting trade in certain categories of objects) and externally (for example, by prohibiting export or requiring export licenses). This is done through the implementation of laws and regulations, transferring ownership of cultural heritage to the State.[10] These acts are linked to the core functions of the State and may not be exercised by private parties, in the realm of commerce or otherwise. In sending the letter, the Ministry was acting as a sovereign and fulfilling its public function.

**4. Plaintiffs' Reliance on Fine Art and Museum Disputes is Misplaced**

Plaintiffs incorrectly assert that the protection of cultural heritage is commercial, citing inapplicable fine art cases, including Nazi expropriation of a painting,[11] a dispute involving the founding/construction of a museum,[12] and the expropriation of paintings eventually loaned to a commercial exhibition.[13] Plaintiffs' reliance on these cases is misplaced, insofar as cultural heritage is a separate category of goods, with its own attending property rights and legal regulations. Fine art is owned in a way that anyone might own property, but only a sovereign can claim ownership based on national patrimony.

The Ministry's letter cannot be characterized as commercial based on the claim that it acted in the same way as a private party. As market regulators, many nations (including Greece) have enacted legislation to vest the ownership of antiquities in the State or to prevent the export and sale of antiquities taken from within their borders. Plaintiffs attempt to shift the Court's attention towards legal doctrines that are inapplicable. For instance, *Kamat v. Kurtha*, 2008 WL 5505880 (S.D.N.Y. Jan. 18, 2004), which focused on

---

[10] Simon Mackenzie, *Regulating the Market in Illicit Antiquities*, Australian Institute of Criminology (Sept. 2002), https://traffickingculture.org/app/uploads/2012/07/regulating-the-market-in-illicit-antiquities.pdf.

[11] *Cassirer v. Kingdom of Spain*, 616 F.3d 1019 (9th Cir. 2013).

[12] *Smith v. Overseas Korean Cultural Heritage Foundation*, 279 F.Supp.3d 293 (D.D.C. 2018).

[13] *Malewicz v. City of Amsterdam*, 517 F.Supp.2d 322 (D.D.C. 2007).

a dispute arising from the inclusion of a stolen painting (fine art) in a Sotheby's catalogue, does not apply, since the parties communicated on several occasions prior to the initiation of a lawsuit, unlike in the instant matter. Moreover, *Kamat* does not discuss the commercial activity exception.

Other cases cited by Plaintiffs are likewise inapposite, as the sovereigns claiming immunity engaged in overtly commercial acts, including loan agreements,[14] insurance, shipping or transport contracts,[15] expropriations,[16] property rentals and tax liens.[17] These cases can be distinguished from the Ministry's transmission of a letter. Yet, Plaintiffs claim that the letter is commercial because it is an exercise of property rights. They mischaracterize the situation. The Ministry sent a letter to communicate concerns about the Bronze Horse and to reserve rights in the speculative event of future legal action, as well as apprising Plaintiffs of the applicable law and their constitutional mandate to recover Greek cultural objects.

Another irrelevant case cited by Plaintiffs is *Smith v. Overseas Korean Cultural Heritage Foundation*, 279 F. Supp. 3d 293 (D.D.C. 2018). There, the Defendant foundation was also established by presidential decree, but its primary act was to build and operate a museum, an act that may be performed by private parties. The Ministry, on the other hand, fulfills its public duties of protecting heritage as an arm of the Greek State, not a commercial entity. The court did not find commercial activity on those grounds in *Smith*; rather, it recognized that the Foundation's main purpose was to run a commercial entity that promotes cultural appreciation. The Ministry has no such commercial function.

**5. Defendant's letter did not have a direct effect in the US for purposes of the FSIA**

Commercial activity cases center on breach of contract, loans, property construction, business management, and similar transactions. No decision penalizes a sovereign for sending a single written

---

[14] *Id.*

[15] *Anderson Trucking Service, Inc. v. Eagle Underwriting Group, Inc.*, No. 3:17-cv-00817 2018 WL 4039326 (D. Conn. Aug. 23, 2018).

[16] Furthermore, the test for commercial activity under the expropriation exception sets a lower bar and is distinct from the test under the commercial activity exception. *See Garb v. Republic of Poland*, 440 F.3d 579, 588 (2d Cir. 2006).

[17] *City of New York v. The Permanent Mission of India to the United Nations*, 446 F.3d 365 (2d Cir. 2007).

communication, precisely because this type of activity is too broad. Direct effect has been found where financial loss occurs in the United States, but here, there has been no such concrete event. For instance, in *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 312 (2d Cir. 1981), the effect of a sovereign's acts was felt in the United States due to Nigeria's repudiation of contracts with US companies, causing the latter to be denied payment from a New York bank. That situation is very different from the issue at hand. Sotheby's claims that it is entitled to a commission from the sale of the Bronze Horse consigned by the Barnets, but this amount is putative. Plaintiffs have not alleged in their complaint that the Bronze Horse would have been sold if not for the Ministry's inquiry, nor that there were interested buyers. The alleged effect is speculative; without a concrete financial loss, there is no direct effect. Attenuated injuries resulting in the US from a sovereign's acts abroad do not qualify for the commercial activity exception. *See Westfield v. Federal Republic of Germany*, 633 F.3d 409, 416 (6th Cir. 2011).

### III. Conclusion

This is not a case involving a simple property dispute; it is about foreign constitutional power to protect cultural heritage. Such an activity is exclusively within the scope of sovereign power and does not fall under the commercial activity exception. In fact, Greece was acting as a market regulator, a role which qualifies as sovereign activity. Plaintiffs attempt to distract the Court with irrelevant case law. The nature of the Ministry's letter is sovereign, as a private party could not have sent it in representation of the Greek State's interest; only a designated public official has this capacity. If Defendant's motion to dismiss is not granted, Plaintiffs will have successfully interfered with the Ministry's ability to operate as a regulator of the market in its cultural heritage obtained from within its own borders, and to protect cultural heritage for its citizens and all humanity. Therefore, Defendant respectfully requests this Honorable Court take into account the foregoing, as well as the arguments originally espoused in the Motion to Dismiss, and hold that Defendant is entitled to immunity under the FSIA.

New York, New York
Dated: December 21, 2018

**Amineddoleh & Associates LLC**
By: s/ Leila A. Amineddoleh
Bar Number 1211

Leila A. Amineddoleh
Leila@artandiplawfirm.com
43 West 43rd Street, Suite 171
New York, NY 10036
Telephone: 212-709-8149

*Attorneys for Defendant,*
*Ministry of Culture and Sports of the Hellenic Republic*